### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM CABRERA,

Plaintiff,

v.

PENNSYLVANIA AMERICAN WATER
COMPANY,

Defendant.

CIVIL ACTION NO. 3:24-CV-01258

(MEHALCHICK, J.)

### MEMORANDUM

Plaintiff William Cabrera ("Cabrera") initiated this action on July 27, 2024, by filing a complaint against Defendant Pennsylvania American Water Company ("American Water"). (Doc. 1). Before the Court is American Water's motion for summary judgment. (Doc. 26). For the reasons provided herein, American Water's motion is **GRANTED in part** and **DENIED in part**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the parties' statements of material facts and responses thereto. (Doc. 31; Doc. 33). American Water is a corporation that operates water treatment plants and employs workers at those plants. (Doc. 31, ¶¶ 15-17; Doc. 33, ¶¶ 15-17). American Water employed Cabrera since February 1996. (Doc. 31, ¶ 15; Doc. 33, ¶ 15). From 2000 until the time of his termination, Cabrera was a licensed plant operator at America Water's Ceasetown Water Treatment Plant (the "Ceasetown Plant"). (Doc. 31, ¶¶ 16-17; Doc. 31, ¶¶ 16-17). A plant operator monitors water treatment plants by performing duties such as monitoring alarm systems, monitoring water tanks, testing water, and loading chemicals to treat water. (Doc. 31, ¶ 17; Doc. 33, ¶ 17). In his position, Cabrera reported to Production

Supervisor Zachary Kaufer ("Kaufer"). (Doc. 31, ¶ 21; Doc. 33, ¶ 21). American Water considered Cabrera to be the most experienced and capable Plant Operator at the Ceasetown Plant. (Doc. 31, ¶ 20; Doc. 33, ¶ 20). Cabrera suffers from Meniere's disease, which he claims causes him to suffer from episodes of vertigo. (Doc. 31, ¶ 73; Doc. 33, ¶ 73). Throughout his tenure at American Water, Cabrera did not request any accommodations related to his condition, aside from missing work an unspecified number of times from 2000 through 2015. (Doc. 31, ¶¶ 73-76; Doc. 31, ¶¶ 73-76).

The parties agree that between 2022 and 2023, American Water disciplined Cabrera four times, with the final discipline being Cabrera's termination. (Doc. 31, ¶¶ 25-29, 39, 57; Doc. 33, ¶¶ 26-29, 39, 57). The first discipline occurred in July 2022, when American Water suspended Cabrera for ten days for an unspecified incident in which Cabrera violated workplace conduct policies. (Doc. 31, ¶ 25; Doc. 33, ¶ 25). The parties agree that the second discipline related to an incident which occurred on May 10, 2023, in which Cabrera sat on a chain outside the Ceasetown Plant's loading dock, the chain broke, and he fell onto the asphalt below. (Doc. 31, ¶¶ 26-29; Doc. 33, ¶¶ 26-29). According to American Water, Cabrera recklessly sat on a chain he was not supposed to sit on, the chain broke, Cabrera fell, and then Cabrera lied about what caused him to fall by claiming a bird flew down at him. (Doc. 31, ¶¶ 26-29). Cabrera counters that he fell because his Meniere's disease caused him to experience vertigo prior to his fall. (Doc. 33, ¶ 26). Cabrera asserts that he sat on the chain to allow the vertigo to pass, but the chain broke. (Doc. 33, ¶¶ 26-29).

The third discipline related to a July 11, 2023, flooding incident where Cabera was filling a phosphate day tank at the Ceasetown Plant when he noticed the phosphate pump was leaking. (Doc. 31, ¶ 31; Doc. 33, ¶ 31). Cabera went upstairs to switch the liquid flowing

from one pump to another but did not shut off the phosphate valve to stop the spill. (Doc. 31, ¶¶ 31-34, Doc. 33, ¶¶ 31-34). Cabrera then heard an alarm sound from the spill and realized the phosphate was overflowing because he had forgotten to shut off the phosphate valve. (Doc. 31, ¶ 34; Doc. 33, ¶ 34). American Water asserts that its procedures required Cabrera to shut off the phosphate valve, but Cabrera denies that such a procedure exists. (Doc. 31, ¶ 32; Doc. 33, ¶ 32). Cabrera then began to fill buckets with overflow water and dump it in the grass outside. (Doc. 31, ¶ 35; Doc. 33, ¶ 35). American Water asserts that Cabrera entered the flooded, contaminated area to do this, but Cabrera denies this. (Doc. 31, ¶ 35; Doc. 33, ¶ 35). At the end of Cabrera's shift, Senior Manager of Production Jeremy Eden ("Eden") arrived at the Ceasetown Plant to assess the situation and observed Cabrera wearing shorts and a phosphate-soaked lab coat that exposed his chest. (Doc. 31, ¶ 37; Doc. 33, ¶ 37). American Water suspended Cabrera for violating American Water's safety policies. (Doc. 31, ¶ 39; Doc. 33, ¶ 39).

The final discipline and Cabrera's eventual termination related to an October 1, 2023, flooding event which caused an alarm to go off at the Ceasetown Plant. (Doc. 31, ¶ 41; Doc. 33, ¶ 41). American Water contends that upon hearing this alarm, Cabrera should have investigated or notified a supervisor, and he did not. (Doc. 31, ¶¶ 42-43). Cabrera counters that the plant often produces nuisance alarms, and he does not recall his immediate response to the alarm. (Doc. 31, ¶¶ 42-43). Several hours after hearing the alarm, Cabrera noticed a crack in the piping at the Ceasetown Plant, which caused alum, a chemical, to spray and flood the containment areas. (Doc. 31, ¶ 44; Doc. 33, ¶ 44). The parties agree that alum got on Cabrera's clothes. (Doc. 31, ¶ 45-46; Doc. 33, ¶ 46). American Water contends that Eden found Cabrera covered in alum and that Cabrera repeatedly entered the containment area.

(Doc. 31, ¶¶ 45-46). Cabrera contends that Eden only found Cabrera wet and with "[a] little" alum on his clothes. (Doc. 33, ¶¶ 45-46). This incident took the Ceasetown Plant out of service, had to be reported to the Pennsylvania Department of Environmental Protection, posed a risk to safe drinking water, and was the most significant incident Eden had seen within his fifteen years of service. (Doc. 31, ¶¶ 47-49; Doc. 33, ¶¶ 47-49). 440 gallons of diluted alum and water were removed from the containment area, and the cleanup took months. (Doc. 31, ¶ 51; Doc. 33, ¶ 51).

Eden investigated the incident and discussed his findings with Production Superintendent Sean Sorber ("Sorber") and Senior Director of Operations for Northeast Pennsylvania Traci Cross ("Cross"). (Doc. 31, ¶¶ 52-53; Doc. 33, ¶¶ 52-53). The parties agree that Eden concluded that Cabrera should be terminated for violating company safety policies and discussed the findings with American Water's Vice President Jim Runzer ("Runzer") (Doc. 31, ¶ 54; Doc. 33, ¶ 54). American Water contends that Eden, Sorber, and Cross all recommended that American Water terminate Cabrera for violating safety policies, but Cabrera posits that the only evidence in the record that Sorber and Cross concurred with such a recommendation is impermissible hearsay. (Doc. 31, ¶¶ 54-55; Doc. 33, ¶¶ 54-55). On November 7, 2023, Eden, Sorber, Cross, and Human Resources Business Partner Nellie Murphy ("Murphy") informed Cabrera that American Water had terminated his employment. (Doc. 31, ¶ 56; Doc. 33, ¶ 56). Cabrera's termination letter stated that American Water terminated his employment based on its investigation into the October 1, 2023, chemical spill. (Doc. 31, ¶ 57; Doc. 33, ¶ 57).

In February 2022, American Water hired Sarah Scheib ("Scheib"), who was 28 at the time of hiring, as a plant operator. (Doc. 31, ¶¶ 64-65; Doc. 33, ¶¶ 64-65). On October 1, 2023,

4

Scheib reported an issue with a fill tank at the Ceasetown Plant to Kaufer. (Doc. 31, ¶ 66; Doc. 33, ¶ 66). Kaufer permitted Sceib to enter the containment area to address the issue while wearing personal protective equipment ("PPE"). (Doc. 31, ¶¶ 67, 72; Doc. 33, ¶¶ 67, 72). Scheib quickly stopped the spill. (Doc. 31, ¶ 69; Doc. 33, ¶ 69). American Water investigated Scheib after the incident and did not discipline her because Kaufer authorized her to enter the containment area, and she wore appropriate PPE. (Doc. 31, ¶¶ 70-71; Doc. 33, ¶¶ 70-71).

On July 27, 2024, Cabrera initiated this action by filing a complaint alleging three counts under state and federal law. (Doc. 1). In Count I, Cabrera alleges American Water violated the Age Discrimination in Employment Act ("ADEA") by discriminating against him on the basis of age. (Doc. 1, ¶¶ 31-39). In Count II, Cabrera alleges American Water violated the Americans with Disabilities Act ("ADA") by discriminating against him on the basis of disability. (Doc. 1, ¶¶ 40-46). In Count III, Cabrera alleges American water violated the Pennsylvania Human Relations Act ("PHRA") by discriminating against him on the basis of age and disability. (Doc. 1, ¶¶ 47-49).

## II.   MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the Court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the

6

nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

## III.  DISCUSSION

American Water moves for summary judgment on both Cabrera's disability and age discrimination claims. (Doc. 26; Doc. 27).

### A.  CABRERA'S DISABILITY DISCRIMINATION CLAIMS

In Counts II and III, Cabrera alleges American Water violated the ADA and the PHRA by discriminating against him on the basis of disability. (Doc. 1, ¶¶ 40-49). American Water avers that Cabrara cannot establish a *prima facie* case of disability discrimination because he fails to show that he has a disability under the ADA and because his termination was unrelated to his disability. (Doc. 27, at 14-23). Cabrera counters that his Meniere's disease qualifies as a disability under the ADA and that he does not assert that he was terminated due to his disability, but rather that he was wrongly disciplined after a May 10, 2023, incident where he fell after he experienced vertigo. (Doc. 34, at 7-9).

The ADA provides that employers "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112 (a). Similarly, the PHRA provides that it is unlawful "[f]or any employer because of. . . disability. . . to discharge from employment such individual. . . or to otherwise discriminate against such individual. . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment." 43 Pa. Stat. Ann. § 955 (a). Courts apply the same standards for both PHRA and ADA claims. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (stating "our analysis of an ADA claim applies equally to a PHRA claim"); *see also Kocher v. Municipality of Kingston*, 400 F. Supp. 3d 138, 151 (M.D. Pa. 2019).

Disability discrimination claims are analyzed under the *McDonnell Douglas* burden shifting standard.[1] *See Thimons v. PNC Bank, N.A.*, 254 F. App'x 896, 897 (3d Cir. 2007) (nonprecedential). Under the *McDonnell Douglas* standard, a plaintiff must first present evidence to establish a *prima facie* case of disability discrimination. *See Thimons*, 254 F. App'x at 897. To establish a *prima facie* case, a plaintiff's evidence "must demonstrate: '(1) he is a

---

[1] This standard was first established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, in which the Court held that when analyzing discriminatory hiring claims, courts must first consider whether a plaintiff has established a *prima facie* case that an employer's decision not to hire them was discriminatory. 411 U.S. 792, 802 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701 (1993). The Court further found that once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to propose a non-discriminatory reason for its decision not to hire the plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. The Court concluded that if the employer establishes a non-discriminatory reason for not hiring the plaintiff, the burden shifts back to the plaintiff to establish that the employer's proposed non-discriminatory reason is pretextual or "discriminatory in its application." *McDonnell Douglas Corp.*, 411 U.S. at 807.

disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Thimons*, 254 F. App'x at 897 (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). "The burden of proving the *prima facie* case 'is not intended to be onerous.'" *Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 603 (E.D. Pa. 2020) (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)). Once the plaintiff meets their initial burden to establish a *prima facie* case, the "burden then shifts to the employer to present a non-discriminatory reason for the adverse decision." *Thimons*, 254 F. App'x at 897.

American Water challenges the first and third requirements of a *prima facie* case. (Doc. 27, at 14-23). Regarding the first requirement, that the plaintiff has a disability within the meaning of the ADA, the ADA has a "three-part definition of the term disability: 'The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Walsh v. Bank of Am.*, 320 F. App'x 131, 132 (3d Cir. 2009) (nonprecedential) (quoting 42 U.S.C.A. § 12102 (1)). "Because the ADA lists the three subcategories in the disjunctive, a plaintiff must only show that he is disabled under one of the three subparts to establish the first element of a prima facie disability discrimination case." *Walsh*, 320 F. App'x at 132–33.

A person has an impairment to a major life activity if they have a condition that limits their ability to perform essential tasks such as caring for oneself, seeing, hearing, eating, sleeping, standing, sitting, or maintaining operations of their major bodily functions. *See* 29

C.F.R. § 1630.2 (i) (defining when a disability limits a major life activity); *see also Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 222 (3d Cir. 2024) (noting that regulations found at 29 C.F.R. § 1630.2 define when a disability limits a major life activity). A plaintiff establishes that his employer regarded him as disabled by presenting evidence of accommodations requests or that the employer labeled them as disabled. *See Walsh*, 320 F. App'x at 133 (finding that a plaintiff created a genuine dispute of material fact over whether he was disabled by presenting records from his employer labeling him as disabled and of accommodations requests). Importantly, "a plaintiff cannot establish disability relying solely on his own testimony without any medical documentation of his impairment at the time of the adverse action." *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 593 (E.D. Pa. 2019) (finding a plaintiff's own testimony that his disability limited his ability to walk insufficient to establish a genuine dispute of fact regarding whether he had a disability absent medical documentation); *see Muhammad v. Matrix Med. Network*, No. CV 20-2244, 2021 WL 4399649, at *4 (E.D. Pa. Sept. 27, 2021) (finding a plaintiff failed to create a genuine dispute of fact regarding whether she had a disability where she "failed to include any medical documentation that she was disabled at the time of the adverse action").

Regarding the third requirement of a *prima facie* case, the plaintiff must present "sufficient [evidence] to create an inference that a causative link exists between his disability and [an adverse action]." *Hollingsworth*, 498 F. Supp. 3d at 603. Plaintiffs often establish a causative link by presenting evidence that a similarly situated coworker without a disability was treated more favorably than the plaintiff, but such comparator evidence is not necessary to establish a causative link. *See Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 421 (E.D. Pa. 2022) (explaining that a plaintiff may establish causation by presenting evidence that non-

disabled, similarly situated coworkers did not suffer an adverse action); *see also Ward v. City Lighting Prods. Co.*, No. CV 20-208, 2021 WL 1720661, at *6 (W.D. Pa. Apr. 30, 2021) (finding comparator evidence is not necessary to establish causation). A plaintiff may also establish causation by presenting evidence that their employer engaged in a pattern of antagonism related to their disability. *See Jakomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 651 (W.D. Pa. 2018) (finding that a plaintiff established causation by presenting evidence that he was regularly treated unusually harshly by his employer shortly after requesting accommodations); *see also Garcia*, 592 F. Supp. 3d at 420 (finding a plaintiff failed to establish causation where he did not present either comparator evidence or evidence of a pattern of antagonism). The plaintiff further must present evidence that the relevant decision makers themselves harbored discriminatory animus towards them. *See Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1085 (3d Cir. 1995) (finding evidence of discriminatory comments by a non-decisionmaker insufficient to create an inference of discrimination when plaintiff failed to present evidence that "the persons ultimately responsible for the plaintiff's termination ever saw or heard" the discriminatory comments); *see also Weaver v. Barrette Outdoor Living, Inc.*, No. CV 22-492, 2024 WL 3219227, at *6 (D.N.J. June 28, 2024) (noting summary judgment is warranted where a plaintiff fails "to point to evidence that his supervisors expressed animus towards him" (citing *Shabazz v. New Jersey Transit*, No. CV 14-4565, 2017 WL 3605314, at *4 (D.N.J. Aug. 22, 2017)).

Cabrera only presents his own testimony that Meniere's disease qualifies as a disability under the ADA. (Doc. 34, at 8-9). During his deposition, Cabrera testified that his Meniere's disease causes him to have incidents of vertigo about once a year which cause him to feel so dizzy that he cannot continue to stand. (Doc. 31-2, at 95, 237-38). Cabrera further testified

that these incidents limit his ability to walk because during them, he needs to either sit or lay down for several minutes. (Doc. 31-2, at 95, 237-38). Cabrera does not present any medical documentation of his disability and does not present any evidence that American Water considered him disabled such as human resources documentation or requests for accommodations. Further, both parties agree that Cabrera never informed American Water's human resources of his Meniere's disease. (Doc. 31, ¶ 77; Doc. 33, ¶ 77). Cabrera fails to create a genuine dispute of material fact over whether he is disabled because he fails to present any evidence outside of his own testimony that he had a disability or that American Water regarded him as disabled. *See Parrotta*, 363 F. Supp. 3d at 593 (noting that a plaintiff may not solely rely on his own testimony that he is disabled to create a genuine dispute of material fact); *see also Muhammad*, 2021 WL 4399649, at *4 (same); *see also Wilson v. Graybar Elec. Co. Inc.*, No. CV 17-3701, 2019 WL 1229778, at *14 (E.D. Pa. Mar. 15, 2019) (finding a plaintiff failed to create a genuine dispute of material fact where he failed to present evidence that he was disabled or that his employer regarded him as disabled).

However, even if Cabrera presented evidence that he had a disability within the meaning of the ADA, American Water is entitled to summary judgment because Cabrera fails to present any evidence that animus towards his disability caused any adverse actions against him. *See Garcia*, 592 F. Supp. 3d at 420. Cabrera correctly notes that, contrary to American Water's assertion that his disability discrimination claims are based on his termination, in the complaint, Cabrera alleges that American Water discriminated against him by disciplining him after he sat on a chain and fell. (Doc. 1, ¶¶ 40-46; Doc. 27, at 14-23; Doc. 34, at 7-9). Cabrera fails to present any evidence that American Water disciplined him because of his disability. Cabrera presents his own testimony that his supervisors at American Water were

aware of his disability but fails to present evidence that anyone involved in the decision to discipline him displayed any animosity towards him or treated non-disabled, similarly situated employees more favorably. (Doc. 31-2, at 47, 94-96, 229-39). The only evidence of hostility towards Cabrera related to his disability is his testimony that a few coworkers used to call him derogatory nicknames like "mini ears." (Doc. 31-2, at 236). However, Cabrera also testified that these coworkers were not his supervisors and that he did not report the derogatory comments to any of his supervisors. (Doc. 31-2, at 236). This evidence is insufficient to create a genuine dispute of fact regarding causation because it is not evidence that any of the relevant decision makers in the decision to discipline Cabrera had animosity towards him or that they were aware of any animosity towards him. *See Gomez*, 71 F.3d at 1085; *see also Weaver*, 2024 WL 3219227, at *6. Accordingly, Cabrera fails to establish a *prima facie* case of disability discrimination and the Court **GRANTS** American Water's motion for summary judgment on Count II and Cabrera's disability discrimination claim in Count III. (Doc. 26).

### B. CABRERA'S AGE DISCRIMINATION CLAIMS

In Counts I and III, Cabrera alleges American Water violated the ADEA and the PHRA by discriminating against him on the basis of age. (Doc. 1, ¶¶ 31-39, 47-49). American Water avers that Cabrera fails to establish a *prima facie* case of age discrimination because he cannot show 1) he was qualified for his position, or 2) he was fired because of his age. (Doc. 27, at 25-31). American Water further argues that, even if Cabrera establishes a *prima facie* case, American Water terminated him for violating its safety policies, and that this is a non-discriminatory reason for termination which Cabrera fails to show is pretextual. (Doc. 27, at 32-40). Cabrera counters that his long tenure at American Water demonstrates he was

qualified for his position and that a reasonable jury may infer causation from the fact that American Water replaced him with significantly younger plant operators. (Doc. 34, at 9-11). Cabrera further contends that a reasonable jury may conclude that American Water's reasons for terminating him were pretextual because its safety policies are vague and inconsistent and because decision makers involved in the decision to terminate him made comments about his age. (Doc. 34, at 11-12).

### 1. Cabrera's *Prima Facie* Case

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623 (a)(1). The PHRA also prohibits discrimination on the basis of age and is "interpreted coextensively with the ADEA." *Sterner v. Siemens Med. Sols. USA, Inc.*, 706 F. App'x 772, 774 (3d Cir. 2017) (nonprecedential). Age discrimination claims are analyzed under the *McDonnell Douglas* standard and the plaintiff must first "show a *prima facie* case of discrimination." *Fahnestock v. Carlisle Reg'l Med. Ctr.*, 659 F. App'x 75, 77 (3d Cir. 2016) (nonprecedential).

To establish a *prima facie* case of age discrimination, a plaintiff must establish that he "(1) is over forty years old; (2) is qualified for the position in question; (3) suffered an adverse employment decision; and (4) was replaced by someone sufficiently younger to permit a reasonable inference of age discrimination." *Fahnestock*, 659 F. App'x at 77. "Once the *prima facie* case is established, the second *McDonnell Douglas* step shifts the burden of production to the employer to show a legitimate non[-]discriminatory reason for the adverse employment decision." *Fahnestock*, 659 F. App'x at 77.

American Water challenges the second and fourth requirements of a *prima facie* case. (Doc. 27, at 25-31). A plaintiff may establish that he is qualified for the position by presenting evidence of positive performance reviews and of a long tenure working for the defendant. *See Kargbo v. Philadelphia Corp. for Aging*, 16 F. Supp. 3d 512, 522 (E.D. Pa. 2014) (finding a plaintiff established he was qualified for the position by presenting evidence of positive performance reviews); *see also Thompson v. Bridon-Am. Corp.,* No. 3:17-CV-00040, 2018 WL 7892167, at *5 (M.D. Pa. Oct. 22, 2018), *report and recommendation adopted*, No. 3:17-CV-40, 2019 WL 1428692 (M.D. Pa. Mar. 29, 2019) (finding that a plaintiff established they were qualified by presenting evidence that they held their position for thirty years). Regarding the final requirement of a *prima facie* case, evidence that a plaintiff was replaced by a substantially younger employee establishes an inference of discrimination even if the plaintiff was replaced by multiple younger employees and/or a temporary replacement. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 730-31 (3d Cir. 1995) (finding that plaintiff established a *prima facie* case by presenting evidence that two younger temporary replacements assumed the plaintiff's job responsibilities); *see also Green v. VF Jeanswear Ltd. P'ship*, No. 10-264, 2011 WL 3667283, at *2 (W.D. Pa. Aug. 22, 2011) (finding that evidence of a temporary younger replacement supported a *prima facie* case of discrimination); *see also Henry v. Acme No. 7871*, No. CIV.A. 11-5505, 2014 WL 899069, at *3 (E.D. Pa. Mar. 7, 2014) (finding the same). A plaintiff establishes a *prima facie* case by presenting evidence that someone who is ten or more years younger than the plaintiff took over a "substantial portion" of the plaintiff's job functions. *Sempier*, 45 F.3d at 730; *see Henry*, 2014 WL 899069, at *3.

Cabrera establishes a *prima facie* case of age discrimination. Regarding whether Cabrera is qualified for his position, American Water avers that a reasonable jury cannot

conclude that Cabrera was qualified for his position because prior to Cabrera's termination, American Water repeatedly disciplined him for safety policy violations. (Doc. 27, at 25-26). However, it is undisputed that Cabrera worked at the Ceasetown Plant since 1996, and that he worked as a plant operator since 2000. (Doc. 31, ¶¶ 15-16; Doc. 33, ¶¶ 15-16). The parties also agree that prior to the accidents at the Ceasetown Plant which led to Cabrera's termination, American Water considered Cabrera to be "the most experienced and capable Plant Operator at the Ceasetown Plant." (Doc. 31, ¶ 20; Doc. 33, ¶ 20). A reasonable jury may conclude that Cabrera was qualified for his position based on his decades of experience and his employer's prior approval of his job performance. *See Kargbo*, 16 F. Supp. at 522 (finding a reasonable jury could conclude a plaintiff was qualified for his position based on positive performance reviews); *see also Thompson*, 2018 WL 7892167, at *5 (finding a reasonable jury could conclude a plaintiff was qualified for his position based on the plaintiff's decades of experience).

Regarding the final requirement, Eden testified that in the six months following Cabrera's termination, American Water hired one plant operator in his thirties, and four plant operators in their twenties. (Doc. 26-5, at 49-51). Cabrera was sixty-years old at the time of his termination. (Doc. 26-4, at 11). American Water avers that these young hires do not establish a *prima facie* case because the new plant operators were more junior level plant operators than Cabrera and after Cabrera's termination, American Water did not hire "another Plant Operator at Mr. Cabrera's equivalent level at the Ceasetown Plant." (Doc. 27, at 27). However, to establish *a prima facie* case, a plaintiff does not need to present evidence that the defendant hired a single, permanent replacement in the same exact position. *See Sempier*, 45 F.3d at 730; *see also Green*, 2011 WL 3667283, at *2; *see also Henry*, 2014 WL

16

899069, at *3. Eden testified that after Cabrera's termination, "[a]ll of the plant operators" performed Cabrera's job functions. (Doc. 26-6, at 49). A reasonable jury may conclude that Cabrera was discriminated against on the basis of his age based on the Eden's testimony that new hires thirty to forty years younger than Cabrera took over a "substantial portion" of his job functions after his termination. *Sempier*, 45 F.3d at 730; *see Henry*, 2014 WL 899069, at *3. Accordingly, the Court finds that Cabrera establishes a *prima facie* case of age discrimination.[2]

### 2. American Water's Non-Discriminatory Basis for Termination

Because Cabrera presents a *prima facie* case of age discrimination, the burden shifts to American Water to present a non-discriminatory basis for termination. *Fahnestock*, 659 F. App'x at 77. If American Water presents a non-discriminatory basis for termination, the burden shifts back to Cabrera to present evidence from which a reasonable jury may conclude that that the non-discriminatory basis was pretextual. *Fahnestock*, 659 F. App'x at 77. American Water contends that it is entitled to summary judgment because Cabrera violated its safety policies, which led to extensive damages to the Ceasetown Plant and created a risk

---

[2] American Water also avers that under the Supreme Court's decision in *Gross v. FBL Financial Services Incorporated*, 557 U.S. 167 (2009), Cabrera must establish but-for causation in order to establish a *prima facie* case of age discrimination. (Doc. 27, at 24). However, the Third Circuit held that *Gross* does not upend the *McDonnell Douglas* burden shifting standard. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (stating "*Gross*, which prohibits shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to precedent applying *McDonnell Douglas* to age discrimination claims"). The Third Circuit has further held that employment claims which require a showing of but-for causation such as retaliation and age discrimination claims require that showing in the pretext stage of the *McDonnell Douglas* analysis, and not the *prima facie* stage. See *Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 97 (3d Cir. 2016) (stating "[a]pplying the 'but-for' standard at the *prima facie* stage would effectively eliminate the need to use the *McDonnell Douglas* burden shifting framework"). Accordingly, the Court finds that Cabrera establishes a *prima facie* case regardless of but-for causation.

to public safety. (Doc. 27, at 32). American Water further contends that there is no evidence in the record from which a reasonable jury may infer that its reasons for terminating Cabrera were pretextual. (Doc. 27, at 32-40). Cabrera counters that a reasonable jury could conclude that American Water's reasons for terminating him were pretextual because he did not clearly violate any of American Water's safety policies, American Water's own leadership could not explain what the relevant safety policies were, and relevant decision makers made comments about his age prior to his termination. (Doc. 27, at 11-12).

An employee allegedly violating safety protocol is a legitimate, non-discriminatory reason for termination. *See Evans v. Pennsylvania Power & Light Co.*, 98 F. App'x 151, 155 (3d Cir. 2004) (nonprecedential) (finding that an employer terminating a plaintiff for violating nuclear power plant safety policies was a legitimate, non-discriminatory reason for termination). To establish that a non-discriminatory reason for termination is pretextual, "the [plaintiff] 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Britton v. Oil City Area Sch. Dist.*, 744 F. App'x 53, 56 (3d Cir. 2018) (nonprecedential) (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013)).

ADEA discrimination claims face a heightened standard relative to other discrimination claims because at the pretext stage, the "plaintiff must proffer evidence that age was the but-for cause of the employer's adverse decision." *Britton*, 744 F. App'x at 56 (citations and internal quotations omitted). Unlike Title VII claims where a plaintiff's claim may proceed if they establish the plaintiff's protected class was one of multiple considerations

in an employer's termination decision, under the ADEA, a plaintiff fails to show pretext where they only present evidence that age "was one motivating factor in" the defendant's decision to terminate them. *Gross*, 557 U.S. at 180; *see Kelly v. Moser, Patterson And Sheridan, LLP*, 348 F. App'x 746, 751 (3d Cir. 2009) (finding that a plaintiff failed to establish pretext by presenting evidence from which a reasonable jury may infer that "at most age was a secondary consideration in the [defendant]'s decision, not a determinative 'but for' factor"); *see also Bianchi v. B & G Mach., Inc.*, No. 22-2172, 2023 WL 1879468, at *1 (3d Cir. Feb. 10, 2023) (nonprecedential) (noting that evidence that age was only one motivating factor is insufficient to establish pretext); *see also Palmer v. Britton Indus., Inc.*, No. 16-1010, 2016 WL 11969757, at *2 (3d Cir. Feb. 26, 2025) (nonprecedential) (stating "[i]t was not enough [to survive summary judgment for an ADEA plaintiff] to show that his age was *a* factor motivating the decision to fire him" (emphasis in original)).

At the same time, a plaintiff does not need to establish that age discrimination was "the sole cause for an adverse employment decision to prevail on an age discrimination claim." *Robinson v. City of Philadelphia*, 491 F. App'x 295, 299 (3d Cir. 2012) (nonprecedential); *see also Alicea v. Health Advoc. Sols., Inc.*, No. CV 24-6005, 2025 WL 2989036, at *3 (E.D. Pa. Oct. 23, 2025) (stating "age discrimination need not be the exclusive cause of an adverse employment action"). The plaintiff instead "must produce evidence supporting an inference that his age had a 'determinative influence' on the decision." *Howell v. Millersville Univ. of Pennsylvania*, 283 F. Supp. 3d 309, 327 (E.D. Pa. 2017), *aff'd*, 749 F. App'x 130 (3d Cir. 2018) (quoting *Palmer v. Britton Indus., Inc.*, 662 F. App'x 147, 150 (3d Cir. 2016), *vacated*, No. 16-1010, 2025 WL 611370 (3d Cir. Feb. 26, 2025)). A plaintiff may do this by presenting evidence of inconsistencies in the defendant's rationale for termination and evidence that the relevant

decision makers made comments about the plaintiff's age "around the time of [the plaintiff]'s actual termination." *DeAngelo v. DentalEZ, Inc.*, 738 F. Supp. 2d 572, 583 (E.D. Pa. 2010); *see Nicholson v. Petco Animal Supplies Stores, Inc.*, 409 F. Supp. 3d 323, 335 (M.D. Pa. 2019) (finding a plaintiff established pretext by presenting evidence of inconsistencies in an employer's rationale and that a decision maker "made ageist remarks directed at [plaintiff[ in front other Petco employees in the months leading up to the [adverse action]").

Here, American Water asserts that it terminated Cabrera for violating its safety policies. (Doc. 27, at 32). American Water presents Cabrera's own deposition testimony in which he testified that the only reason American Water gave him for his termination was his alleged violations of PPE safety policy. (Doc. 31, ¶ 57; Doc. 31-2, at 189). Based on this, the Court finds that American Water sufficiently presents a legitimate, non-discriminatory basis for termination. *See Evans*, 98 F. App'x at 155.

Cabrera avers that a reasonable jury can disbelieve that he was terminated based on his alleged safety policy violations because American Water cannot explain how he violated its safety policies. (Doc. 34, at 3-5, 11-12). Looking to the evidence, Cabrera testified that he was terminated for violating PPE policies during the second spill incident. (Doc. 31-2, at 189). Eden, testifying on behalf of American Water, testified that American Water has "minimum [PPE] requirements" within "operational areas inside the treatment plant" such as "safety glasses, cut resistant gloves when doing tasks, and steel-toed shoes." (Doc. 31-1, at 5). American Water's standard operating procedure also lists safety glasses, gloves, and safety-toed shoes as required PPE. (Doc. 29-6, at 4). Cabrera testified that during the second spill incident, he wore PPE such as gloves, safety glasses, and his work boots. (Doc. 31-2, at 170).

Based on Cabrera's testimony, a reasonable jury could conclude that Cabrera was wearing PPE at the time of the incident.

American Water also avers that Cabrera violated its policies by repeatedly engaging in reckless conduct when he sat on a chain and caused it to break, failed to follow protocol during the first spill incident, and failed to follow protocol again during the second spill incident. (Doc. 27, at 34-36). However, the parties agree that Cabrera was terminated as a result of Eden's investigation into Cabrera's conduct during the second spill incident. (Doc. 31, ¶ 57; Doc. 33, ¶ 57). Cabrera testified that during the second spill incident, upon noticing a leak, he notified his supervisor, Kaufer, and acted promptly to prevent further damage to the plant. (Doc. 31-2, at 164-65, 170). American Water avers that Cabrera acted recklessly by clearing an alarm which could have alerted him to the flooding incident before it became severe. (Doc. 27, at 21). Cabrera testified that he likely assumed the alarm was "nuisance alarm[]" which plant operators regularly clear and that he promptly notified his supervisor and took action upon realizing there was a flooding incident. (Doc. 31-2, at 165-65, 170, 185-86). Based on Cabrera's testimony, a reasonable jury may conclude that he did not act carelessly, but rather did his best to stop the flood incident from worsening.

Cabrera further testified that after the first flooding incident, Eden and Murphy made comments about him being an older person prone to slipping and falling. (Doc. 31-2, at 150). According to Cabrera, Eden made a comment along the lines of "you're an older person and you're in the basement. You could slip and fall." (Doc. 31-2, at 150). Cabrera further testified that Murphy made the same comment and stated "[w]e understand you're older, and we just want to make sure you're okay." (Doc. 31-2, at 150-51). American Water avers that these are stray comments that "bear[] no direct relationship to the decision-making process leading to

the adverse action." (Doc. 27, at 30). However, American Water agrees that Eden led the investigation into Cabrera's actions and Murphy was an American Water human resources officer present for Cabrera's termination. (Doc. 31, ¶¶ 52, 56). A reasonable jury may infer from Eden and Murphy's comments that prior to Cabrera's termination and the second spill, two decision makers were concerned about Cabrera's age and made comments connecting their concerns about his age to their eventual proposed rationale for his termination. (Doc. 31-2, at 150-51). Based on Cabrera's evidence that he did not violate safety policies and that American Water's decision makers were concerned about his age, there is a genuine dispute of material fact regarding whether Cabrera's age was a determinative, but-for factor in American Water's decision to terminate him.[3] See *Nicholson*, 409 F. Supp. 3d at 335 (finding

---

[3] Cabrera also attempts to establish pretext by arguing that Scheib, a twenty-eight-year-old plant operator, was not terminated despite also being involved in an alum-related spill incident. (Doc. 34, at 3-4). However, comparator evidence only creates a genuine dispute of material fact where the proposed comparator is similarly situated to the plaintiff. *See Brasher v. Thomas Jefferson Univ. Hosp. Inc*, 676 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential); *see also Udasco-Kist v. Thomas Jefferson Univ. Hosps., Inc.,* No. CV 19-3176, 2021 WL 254584, at *5 (E.D. Pa. Jan. 25, 2021)*, aff'd sub nom. Udasco-Kist v. Thomas Jefferson Univ. Hosp., Inc.*, No. 21-1146, 2022 WL 2805131 (3d Cir. July 18, 2022). To establish a comparator is similarly situated, a plaintiff must present evidence that the comparator had a similar disciplinary record as the plaintiff. *See Brasher*, 676 F. App'x at 125; *see also Udasco-Kist,* 2021 WL 254584, at *5. It is undisputed that Cabrera had a disciplinary record with at least three alleged violations of safety policies prior to his termination and Cabrera does not present any evidence that Scheib had a disciplinary record. (Doc. 31, ¶¶ 25, 29, 39; Doc. 33, ¶¶ 25, 29, 39). The Court also notes that the parties dispute whether Scheib was similarly situated to Cabrera based on an affidavit from Eden stating that Cabrera's seniority made him unique among plant operators. (Doc. 27, at 21-22; Doc. 34, at 4). Cabrera avers that the Court cannot consider the Eden affidavit because it contradicts Eden's previous deposition testimony. (Doc. 34, at 4). The Court need not address this argument because without evidence that Scheib had a similar disciplinary record to Cabrera, the Court cannot consider her to be similarly situated regardless of the affidavit. *See Brasher*, 676 F. App'x at 125; *see also Udasco-Kist,* 2021 WL 254584, at *5. Nonetheless, Cabrera still establishes pretext for the reasons discussed above because comparator evidence is not required to establish pretext. *See Anderson v. Wachovia*

a reasonable jury could determine age was a but-for cause of the plaintiff's termination where the plaintiff presented evidence of inconsistencies in the defendant's proposed non-discriminatory reasons of termination and that relevant decision makers made comments about her age); *see also DeAngelo*, 738 F. Supp. 2d at 583 (finding a reasonable jury could conclude age was a but-for cause of a plaintiff's termination due to ageist remarks). Accordingly, the Court **DENIES** American Water's motion for summary judgment on Cabrera's age discrimination claims. (Doc. 26).

IV.    <u>C</u>ONCLUSION

For the foregoing reasons, American Water's motion for summary judgment is **GRANTED in part** and **DENIED in part**. (Doc. 26). American Water's motion is **GRANTED** as to Cabrera's disability discrimination claims in Count II and III. (Doc. 26). Cabrera's disability discrimination claims will be **DISMISSED**. (Doc. 1, ¶¶ 40-49). American Water's motion is **DENIED** as to Cabrera's age discrimination claims in Counts I and III. (Doc. 26).

An appropriate Order follows.

**Dated: January 6, 2026**                    *s/ Karoline Mehalchick*
                                  **KAROLINE MEHALCHICK**
                                  **United States District Judge**

---

*Mortg. Corp.*, 621 F.3d 261, 268–69 (3d Cir. 2010) (stating "[a]lthough [comparator] evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case").